IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

SALEH FAKHOURY, *et al.*,

    Plaintiffs,

       v.                             CIVIL NO.: WDQ-12-0268

GREAT NORTHERN INSURANCE CO.,

    Defendant.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Saleh and Nelly Fakhoury ("the Fakhourys") sued Great
Northern Insurance Company ("GNI") for breach of their home
insurance contract and failure to act in good faith.  For the
following reasons, GNI's motion to dismiss counts III and IV
will be denied.

I.   Background[1]

The Fakhourys, a married couple, owned a home in
Lutherville, Maryland.  GNI issued a Chubb Masterpiece insurance
policy ("the policy") that covered loss of the home and personal

---

[1] For the motion to dismiss, the well-pled allegations in the
amended complaint are accepted as true.  *Brockington v. Boykins*,
637 F.3d 503, 505 (4th Cir. 2011).  A court may consider
"documents incorporated into the complaint by reference, and
matters of which a court may take judicial notice" on a 12(b)(6)
motion.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.
308, 322 (2007).  A court may take judicial notice of matters of
public record, including court and administrative filings.
*Clark v. BASF Salaried Emps.' Pension Plan*, 329 F. Supp. 2d 694,
697 (W.D.N.C. 2004), *aff'd*, 142 F. App'x 659 (4th Cir. 2005)
(court may take judicial notice of public record); *Morris v.
David Lerner Assocs.*, 680 F. Supp. 2d 430, 436 (E.D.N.Y. 2010)
(administrative filings are matters of public record).

items in it.  ECF No. 12-1 ¶¶1, 8.  The policy promised to provide the replacement cost of the home and up to $777,000 for lost personal items.  *Id.* ¶11.

Before March 2009, Nelly Fakhoury ("Mrs. Fakhoury") and the Fakhourys' son Julius had moved to Florida, planning to stay for about a year for Julius's education.[2]  Saleh Fakhoury ("Mr. Fakhoury") spent half his time in Maryland, tending his businesses, and the rest of his time with his family.  *Id.* ¶15. Mrs. Fakhoury's daughter was in New York at all relevant times. *Id.*

In March 2009, contractors were renovating the basement in the Fakhourys' home, after a water leak.  *Id.* ¶13.  On March 13, 2009, the contractors found an electrical fire in the basement. Mr. Fakhoury "promptly reported" the fire to GNI by phone.  *Id.* ¶14.

On March 15, 2009, the home, and its contents, were destroyed by fire.  *Id.* ¶11.  The Fakhourys and Julius were in Florida at the time.  ECF No. 12-1 ¶16.  Only the Fakhourys, Mrs. Fakhoury's mother, and an agent of the contractors had keys to the home.  *Id.* ¶17.  Mr. Fakhoury "promptly notified" GNI, by phone, that the house had been destroyed in the fire.

---

[2] Mrs. Fakhoury and Julius eventually moved back to Maryland, as planned, and lived in a rental residence with Mr. Fakhoury until the home was rebuilt.  ECF No. 12-1 ¶15.

The Fakhourys hired a private adjuster to help them submit a formal claim, with a sworn statement of the loss. *Id.* ¶12. The Fakhourys gave GNI, among other things, several years of records for their personal and business bank accounts, cell phone, air travel, motor vehicle title and loan records, real property rental listing records for property they owned, tax returns, and credit card statements. *Id.* ¶20.

GNI recorded the Fakhourys' examinations by a GNI investigator; they were then examined under oath ("EOU") by GNI's counsel. Mrs. Fakhoury's EOU lasted about nine hours. *Id.* ¶21.

On April 1, 2010, GNI denied coverage. ECF No. 13-2.[3] GNI denied coverage because it had determined that (1) "the fire giving rise to this claim was intentionally set by a person directed by the [Fakhourys] to cause the loss," and (2) the Fakhourys,

> in their Sworn Statements in Proof of Loss . . .  as
> well as during their sworn testimony . . . made false
> statements, intentionally concealed and misrepresented
> material facts and circumstances relating to this
> insurance, and engaged in fraudulent conduct.

*Id.* at 1, 3.  GNI said that the misrepresentations

> involve[d] the Fakhourys' knowledge of the true
> circumstances and cause of the March 15, 2009 fire;
> the Fakhourys' financial affairs; the Fakhourys' pre-

---

[3] The denial letter is incorporated by reference in the complaint.  ECF No. 12-1 ¶23.

loss efforts to sell the [home]; the contents located at the [home] on March 15, 2009; and other material facts and circumstances.

*Id.* at 3.[4]

The Fakhourys filed a complaint with the Office of the Insurance Commissioner of the Maryland Insurance Administration ("MIA"), challenging GNI's denial of coverage ("the MIA complaint"). ECF No. 14-2. The MIA complaint alleged that

the only reason for the denial stated in [GNI's denial] letter is merely that "Great Northern had determined that the fire giving rise to this claim was intentionally set by a person directed by the insureds to cause the loss." Other than that broad conclusory statement, no evidence whatsoever supporting such a "determination" was provided, despite repeated requests.

*Id.* ¶6. Counts I and II of the MIA complaint alleged breach of contract; counts III and IV alleged failure to act in good faith, pursuant to § 27-1001 of the Insurance Article of the Annotated Code of Maryland. *Id.* ¶¶24-61. The Fakhourys argued that GNI had no credible evidence that they had directed anyone to set the fire, and the denial "failed to constitute an informed judgment based on honesty and diligence supported by

---

[4] The policy did not provide coverage if the insured "has intentionally concealed or misrepresented any material fact relating to this policy before or after a loss," or the insured had directed a person to intentionally cause the loss. ECF No. 2-2 at 37; ECF No. 13-2 at 3.

evidence." *Id* ¶51.[5]  They did not mention the finding that they had made false statements.  *See Id.*

On October 17, 2011, the MIA concluded that GNI had acted in good faith in denying the claim, and the Fakhourys were not entitled to coverage.  ECF No. 14-5 at 10.[6]

On December 2, 2011, the Fakhourys filed a largely identical complaint against GNI in the Circuit Court for Baltimore County, pleading two counts of breach of contract (counts I and II), and two counts of failure to act in good faith (counts III and IV).  ECF No. 2.  On January 27, 2012, GNI removed to this Court pursuant to 28 U.S.C. § 1441, on the basis of diversity jurisdiction.  ECF No. 1.  On February 3, 2012, GNI moved to dismiss counts III and IV, the failure to act in good

_____

[5] GNI filed a responsive pleading defending its denial of coverage.  The Fakhourys submitted a 71 page reply to the responsive pleading, but the MIA returned it because the "regulations do not allow for a response to the insurer's responsive filing."  ECF No. 14-4.  The reply argued that the Fakhourys had not made misrepresentations, and GNI's conclusion that the statements were false was "a perfect example of the bad faith manner in which [GNI] denied coverage."  ECF No. 14-3 at 15.  The Fakhourys re-submitted the reply to the MIA on September 9, 2011.  ECF No. 16-1 at 8 n.2; *see also* ECF No. 16-5 (letter of re-submission).  The MIA decision does not reference the reply.  *See* ECF NO. 14-5.

[6] The MIA held that GNI had "overwhelming evidence to support its conclusion to deny coverage" and the circumstances led "to the reasonable conclusion that the fire was set by someone with access to the home."  It noted that there was "substantial, undisputed evidence in the record that [the Fakhourys] concealed or misrepresented material facts related to the loss.  Therefore, under the terms of its policy . . . [GNI] could have denied coverage on this basis alone."  *Id.* at 9-10.

faith claims.  ECF No. 8.  On February 21, 2012, the Fakhourys
filed an amended complaint and opposed the motion to dismiss the
original complaint.  ECF Nos. 12, 13.  On March 8, 2012, GNI
moved to dismiss counts III and IV of the amended complaint.
ECF No. 14.  The Fakhourys opposed the motion.  ECF No. 16.  GNI
filed a reply in support of their motion.  ECF No. 17.

II.  Discussion

   A.   Standard of Review

   Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed
for failure to state a claim upon which relief can be granted.
Rule 12(b)(6) tests the legal sufficiency of a complaint, but
does not "resolve contests surrounding the facts, the merits of
a claim, or the applicability of defenses." *Presley v. City of
Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).

   The Court bears in mind that Rule 8(a)(2) requires only a
"short and plain statement of the claim showing that the pleader
is entitled to relief." *Midgal v. Rowe Price-Fleming Int'l
Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001).  Although Rule 8's
notice-pleading requirements are "not onerous," the plaintiff
must allege facts that support each element of the claim
advanced. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761,
764-65 (4th Cir. 2003).  These facts must be sufficient to
"state a claim to relief that is plausible on its face." *Bell
Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Twombly,* 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679. "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

B.   The Motion to Dismiss the Original Complaint

GNI's motion to amend the original complaint was mooted by the timely filing of the amended complaint. *See* Fed. R. Civ. P. 15(a)(1)(A). It will be denied as moot.

C.   Exhaustion of Relief

Courts and Judicial Proceedings Article § 3-1701, Maryland Code, governs actions against insurers by individuals who allege that the insurer did not act in good faith in denying benefits. Md. Code, Cts. & Jud. Proc. § 3-1701. It requires compliance with § 27-1001 of the Insurance Article. *Id.* § 3-1701(c). Section 27-1001 states that a "complaint stating a cause of action under § 3-1701 of the Courts Article shall first be filed

with the [Maryland Insurance Administration]" ("MIA").[7]  Md.
Code, Ins. § 27-1001(d)(1).

Counts III and IV of the amended complaint allege that GNI
denied coverage in bad faith because it had no evidence sup-
orting its assertion that the Fakhourys made misrepresentations,
withheld information, or contributed to the fire.  ECF No. 12-1
¶¶38-69.

GNI contends that the Fakhourys have not stated a claim
because they "did not challenge the second ground [fraud and
omissions] of [GNI's] denial of their claim before the [MIA],
[and thus] are precluded from doing so in a civil action."  ECF
No. 14 at 2.  GNI contends that the Fakhourys are bound by the
MIA's finding that GNI acted in good faith in denying coverage
on the basis of their misrepresentations, then GNI's bad faith
conclusion that the Fakhourys caused the fire would be irrel-
evant.  *Id.*

There is little authority interpreting the requirement for
pursuing an administrative remedy.  The requirement that *the*

---

[7] Although the administrative process includes an option to
appeal to state circuit court, § 27-1001(g)(1), the civil action
authorized under § 3-1701 is independent, and should not be
treated as an appeal of the administrative decision.  *Thompson
v. State Farm Mut. Auto. Ins. Co.*, 9 A.3d 112, 119 (Md. Ct.
Spec. App. 2010).

"complaint"[8] that is filed with the court be filed first with the MIA suggests that the administrative complaint must be filed in the circuit court.

However, as the Fakhourys note, §§ 3-1701 and 27-1001 do not explicitly require that an insured contest in the administrative complaint all grounds on which the denial was based. *See* ECF No. 16-1 at 8. Section 27-1001 requires that the MIA complaint "specify the applicable insurance coverage and the amount of the claim," and "state the amount of actual damages, and the claim for expenses and litigation costs;" it requires nothing more. *See* Md. Code, Ins. § 27-1001(d)(2). Further, the MIA's "record is not before the court," and "its decision appears to be a nullity[,] once [an insured] has filed her civil action under . . . § 3-1701" of the Courts & Judicial Proceedings Article. *Thompson v. State Farm Mut. Auto. Ins. Co.*, 9 A.3d 112, 121 (Md. Ct. Spec. App. 2010).

Lacking contrary authority from the Maryland Court of Appeals, this Court concludes that GNI has not met its burden on the motion to dismiss. The Fakhourys satisfied § 27-1001 by filing a complaint that challenged GNI's good faith,[9] and noted

_____

[8] A "complaint" is "a written document that purports to state a cause of action under Courts and Judicial Proceedings Article, § 3-1701." COMAR 31.08.11.03.B(3).

[9] GNI's argument that the Fakhourys did not satisfy § 27-1001 because their amended complaint does not "stat[e] a cause of

9

the applicable coverage, amount of the claim, amount of actual damages, and sought expenses and litigation costs.  Md. Code, Ins. § 27-1001(d).  They satisfied § 3-1701 by filing this suit after receiving a final decision under § 27-1001.  This Court does not believe that to exhaust their administrative remedies, the Fakhourys were required to state before the MIA all the reasons they believe that GNI had acted in bad faith.[10]

   D.   Adequacy of the Pleadings

   Alternatively, GNI contends that the Fakhourys have not alleged facts that plausibly show they are entitled to relief on counts III and IV, the good faith claims.  ECF No. 17 at 13.  An insurer is liable for actual damages (up to the limits of the policy), expenses, and litigation costs, if, in denying

---

action under § 3-1701" lacks merit because the MIA does not consider whether an MIA complaint states a cause of action when it makes it the administrative decision.

[10] Contrary to the Fakhourys' assertion, they did not challenge the findings of fraud and misrepresentations in the MIA complaint.  *See* ECF No. 16-1 at 7-8.  The MIA complaint stated that GNI's "only" stated reason for denial was that the Fakhourys had directed that the house be burned.  ECF No. 14-2 ¶6.  The Fakhourys contend that the alleged misstatements supported the conclusion that the Fakhourys had the house burned, but did not create an independent ground for denial, and were only a component of the arson conclusion.  *See* ECF No. 16-1 at 7-8.  However, GNI asserted the misstatements as an independent ground in the denial letter; the investigation was not limited to "whether the Fakhourys were involved in setting the fire."  *Id.* at 7.  Under the policy, GNI could deny benefits based on *any* misrepresentations, not only on misrepresentations made during a claim investigation or those that establish that the Fakhourys were involved in setting the fire.  ECF No. 2-2 at 37.

coverage, it failed to act in good faith.  Md. Code, Cts. & Jud. Proc. § 3-1701(d)-(e).  A decision is made in good faith if it represents "an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim."  *Id.* § 3-1701(a)(4).

The amended complaint alleged that: (1) GNI knew or should have known of evidence that the Fakhourys were truthful, had not concealed evidence, and had not caused the fire,[11] (2) GNI did not have evidence that the Fakhourys had violated the terms of the policy, (3) despite this lack of evidence, GNI denied benefits, (4) GNI repeatedly refused to produce the evidence supporting its denial.[12]  ECF No. 12-1 ¶¶13-20, 22-25A.

Although they may later be controverted, the allegations in the amended complaint state a plausible claim for relief, because the complaint supports the reasonable inference that GNI had no evidence for its denial of coverage and knew of evidence

---

[11] Such as: that the Fakhourys were in Florida during the fire and no one else but the contractors had keys to the house, the house had recently suffered an electrical fire--which Mr. Fakhoury quickly reported to GNI--and the Fakhourys' extensive cooperation with GNI.  ECF No. 12-1 ¶¶13-21.

[12] The Fakhourys maintain that they were unable to "respond to [GNI's] bald [and allegedly unsupported] allegations," in this suit, although they concede that GNI made specific allegations and produced evidence during the MIA proceeding.  ECF No. 16-1 at 14, 14 n.2.

supporting the Fakhourys' claim. *See Twombly*, 550 U.S. at 570. Accordingly, the motion will be denied.

III. Conclusion

For the reasons stated above, GNI's motion to dismiss counts III and IV will be denied.

_____4/27/12_____
Date

_____
William D. Quarles, Jr.
United States District Judge

12